UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AHUD CHAZIZA,<br><br>    Plaintiff<br><br>v.<br><br>STAMMERJOHN, et. al.,<br><br>    Defendants | Case No.: 3:17-cv-00247-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 29, 39 |

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 29, 29-1 to 29-8.) Plaintiff filed a response and Motion for Partial Summary Judgment. (ECF Nos. 37, 38, 38-1 to 38-9, 39, 40, 40-1 to 40-9). Defendants filed a reply in support of their motion (ECF No. 41) and response to Plaintiff's motion (ECF No. 42). Plaintiff filed a reply in support of his motion. (ECF No. 43.)

    After a thorough review, it is recommended that Defendants' motion be granted, and Plaintiff's motion be denied.

## **I. BACKGROUND**

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC). He is represented by counsel Mark Wray, Esq., and is proceeding with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 9.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Deputy

Director Dwayne Deal, Associate Warden William Sandie and Correctional Caseworker Colette Stammerjohn. On screening, Plaintiff was allowed to proceed with due process claims that Defendants failed to properly calculated his statutory credits under Nevada Revised Statute (NRS) 209.4465 and the 2007 amendments from Assembly Bill (AB) 510 and case law interpreting the statute. Plaintiff was convicted under two criminal counts and was sentenced under each to a term of imprisonment of 60 to 80 months, to run consecutively. Plaintiff alleges that as a result of the failure to properly calculate his statutory credits he was imprisoned for an extra 85 days as to Count 1, and his parole eligibility deadline should have been advanced as to Count 2. Plaintiff alleges that he is not seeking restoration of statutory time credits but does seek monetary damages for the alleged constitutional violation.

Defendants move for summary judgment, arguing: (1) Plaintiff's claim is *Heck* barred as he failed to obtain favorable termination in a proceeding that would have shown he was entitled to 85 credits applied to his first consecutive sentence; (2) to the extent he alleges he was denied credits applied to the front-end of his second consecutive sentence, no state law authority clearly entitled prisoners to a front-end application of credits in the parole-eligibility context until late 2017, and no known court order entitled Plaintiff to a recalculation until early 2018, which prison officials timely complied with; (3) Plaintiff did not sustain a cognizable injury because his allegations that he could have been granted parole had he been seen by the board earlier are speculative (he was seen by the parole board soon after his credit recalculation for the front-end of his second consecutive sentence and was denied parole); (4) Deal, Sandie and Stammerjohn did not personally participate in the constitutional violation because Sandie and Stammerjohn were merely responding to Plaintiff's grievances and Deal was not on notice of the need to re-calculate Plaintiff's credits until late 2017, and could not have been on notice of Plaintiff's

specific entitlement to recalculation until early 2018; and (5) Defendants are entitled to qualified immunity because Defendants were not on clear notice that their actions violated Plaintiff's constitutional rights.

In his partial motion for summary judgment, Plaintiff asks the court to enter partial summary judgment in his favor as to liability because Defendants held him in custody on Count 1 of his sentence beyond the expiration of his sentence when they refused to extend him statutory credits, and then refused to extend proper statutory credits as to count 2 of his sentence, depriving him of having his parole eligibility date advanced and to parole hearings.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

The material facts are not in dispute.

Plaintiff's offense date was in 2004. He was arrested on October 18, 2006, and has been in custody ever since (within NDOC since May 2009).

In the 2007 legislative session, AB 510, codified as amendments to NRS 209.4465, was enacted into law. It is titled: "Credits for offenders sentenced for crime committed on or after July 17, 1997." As amended NRS 209.4465(1) increased the statutory time credits for an offender sentenced to prison for a crime committed on or after July 17, 1997 (and who does not have a serious infraction and has performed the duties assigned in a faithful, orderly and peaceable manner) from 10 days for each month served to 20 days for each month served. Section 7 provides: "Except as otherwise provided in subsections 8 and 9, credits earned pursuant to this section: (a) Must be deducted from the maximum term or the maximum aggregate term imposed by the sentence, as applicable; and (b) Apply to eligibility for parole

unless the offender was sentence pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole."[1]

On May 11, 2009, Plaintiff was sentenced to 60 to 80 months for Count 1 (first degree kidnapping) and 60 to 80 months for Count 2 (robbery), to run consecutively.

On April 26, 2014, Plaintiff discharged the term of incarceration imposed under Count 1 and began serving his consecutive term under Count 2.

On December 2, 2015, Plaintiff obtained a copy of his "Credit History by Sentence." At that point, he noticed that his sentence for Count 1 had been credited for 10 days of statutory credits from October 17, 2006 through June 30, 2007, for a total of 85 days. Plaintiff contends that he should have been credited for 20 days of statutory credit for each month served, for a total of 170 statutory credits. He maintains he had no serious infraction and performed his duties as a prisoner in a faithful, orderly and peaceable manner, and so is entitled to the statutory credits in NRS 209.4465(1).

On April 11, 2016, Plaintiff sent a letter to the timekeeper at NDOC asking that he be given his 85 days in credits toward his first sentence under *Vonseydewitz v. Warden,* No. 66159, 2015 WL 3936827 (Nev. June 24, 2015); that the start date of his second sentence be adjusted accordingly; and, that the statutory credits also be deducted for the second sentence for his parole eligibility date. (ECF No. 29-3 at 16-18.) NDOC's Offender Management Division (OMD) sent him a form letter in response on April 18, 2016, stating that the unpublished *Vonseydewitz*

---

[1] The Nevada Supreme Court has held that section 8 of the statute, which was included in the 2007 amendments, and excludes certain offenses from obtaining the credits, does not apply to an offense committed before the effective date of the amendment. *Williams v. State Dep't of Corr.*, 402 P.3d 1260, 133 Nev. 594, n. 1 (2017).

6

decision was not binding precedent and NDOC was not compelled to conform the holding for other inmates under similar circumstances. (ECF No. 29-3 at 19.)

*Vonseydewitz v. Legrand*, is an unpublished decision of the Nevada Supreme Court regarding an inmate's post-conviction habeas petition challenging the computation of time served. Vonseydewitz was sentenced to concurrent terms of 8 to 20 years. He alleged that NDOC should have deducted statutory credits earned under NRS 209.4465 from his minimum sentence, but was not. The warden argued that the inmates was only entitled to deductions from his maximum sentence. Vonseydewitz's offenses were committed in 1996 and 2006. The court explained that "[t]he statutes in effect at the time the offenses were committed govern." *Id.* at *1 (citing *Weaver v. Graham*, 450 U.S. 24, 31-33 (1981); *Goldsworthy v. Hannifin*, 86 Nev. 252, 255, 468 P.2d 350, 352 (1970)). At the time, NRS 209.4465 stated that statutory credits applied to parole eligibility, except if the offender was sentenced under a statute that specified a minimum sentence that had to be served before the prisoner became eligible for parole. Vonseydewitz was sentenced under a statute that gave a minimum term of 2 years and maximum term of 20 years. NDOC was applying NRS 209.4465(7)(b)'s exception and was not deducting his statutory credits from his minimum sentence. The Nevada Supreme Court held that the statute provided a minimum sentence, but "it does not necessarily follow that it specified a minimum sentence that must be served before Vonseydewitz becomes eligible for parole." *Id*. at *1. At the time Nevada statutes either had a "minimum-maximum" sentence structure, or a "parole eligibility" statute that stated that parole eligibility began when a minimum number of years was served. *Id*. at *2. Vonseydewitz's statute was a "minimum-maximum" statute. While "parole eligibility" statutes "clearly fell within NRS 209.4465(7)(b)'s exception because they specified that eligibility for parole began only after the minimum sentence was served[,]

"minimum-maximum" statutes suggest the contrary. *Id.* at *2. The Nevada Supreme Court confirmed that NRS 209.4465's statutory credits apply to parole eligibility. The Nevada Supreme Court concluded that NDOC was improperly denying the deduction of statutory credits from Vonseydewitz's minimum sentence. *Id.* at *2.

On April 27, 2016, Plaintiff submitted an informal level grievance. He referenced his April 11, 2016 letter, and stated that he was only given 10 days credits for the months of November 2006 to June 2007, and five credits from October 17, 2006 to October 31, 2006. He stated that under NRS 209.4465 he was entitled to receive 20 days credits per month from November 1, 2006 to June 1, 2007, and 10 days credits from October 17, 2006 to October 31, 2006. He indicated that if he was given the 85 days requested, it would move his expiration of Count 1 85 days sooner, and require Count 2 to be moved 85 days from its current start time, thereby moving his parole eligibility date forward by 85 days. (ECF No. 29-3 at 9-12.)

The informal level grievance was assigned to Stammerjohn, who responded: "AB 510 Retro dates were applied from 7/1/2007 forward. On 10/2006 you only received 5 days because your "RETRO" days for your jail credits shows 10/17/2006. Grievance denied." (ECF No. 29-3 at 8.)

Plaintiff appealed to the first level, stating that Stammerjohn's answer failed to address that NRS 209.4465 applies 20 statutory credits retroactively to all persons sentenced on or after July 17, 1997. (ECF No. 29-3 at 5-6.) The first level grievance was assigned to Sandie, who responded: "NRS 209.4465.8.d "Credits earned pursuant to this section by an offender who has not been convicted of a Category A or B felony. Your convictions are both Category A and B." (ECF No. 29-3 at 4.)

Plaintiff appealed to the second level, stating that section 8 of NRS 209.4465 was added in 2007, and because his crime occurred in 2004, that section does not apply to him. (ECF No. 29-3 at 3.) The second level grievance was assigned to Deal who responded by acknowledging that AB 510 modified NRS 209.4465 so that inmates were eligible for 20 statutory credits per month instead of 10. It was effective July 1, 2007, but nothing stated that it applied retroactively. In addition, subsection 7 states that the credits must be deducted from the maximum term and subsection 8 only states when these credits cannot be applied to the minimum term. He explained that inmates who had credits that moved their start date back beyond July 1, 2007, this portion of the sentence structure only gets 10 statutory credits per month instead of 20. Plaintiff's sentence structure was split between 10 statutory credits per month and the 20 statutory credits per month. The first month on his credit history report had the 10 statutory credits per month prorated because he did not start his sentence until October 17, 2006, so from October 17, 2006 to October 31, 2006, he was only eligible for 5 of the 10 statutory credits for that month. He concluded Plaintiff was not eligible for the extra 85 statutory credits alleged. (ECF No. 29-3 at 2.)

Plaintiff filed a second grievance. Stammerjohn responded at the informal level, stating that the Nevada Supreme Court case related to AB 510 credits being applied to the minimum term does not apply to any other inmate other than the one specified in the order. (ECF No. 29-4 at 13.) At the first level, Sandie stated that under NRS 209.4465.8.d, credits earned under this section by an offender who has not been convicted of a Category A or B felony, and Plaintiff's convictions are Category A and B felonies, so he is not eligible for credits to come off his minimum time. Additionally, Sandie stated that Plaintiff had been receiving 20 statutory credits a

month since the first full month of his Count 2 sentence, noting that Count 1 expired April 26, 2014, and Count 2 began April 27, 2014. (ECF No. 29-4 at 8.)

Deal responded at the second level that *Vonseydewitz* only applied to inmate Vonseydewitz. In any event, he said that even before AB 510 changes went into effect July 1, 2007, inmates who had minimum terms imposed by courts were not having 209.4465 credits applied to the minimum term. AB 510 increased the statutory credits from 10 to 20 per month and allowed NRS 209.4465 credits to be applied to the minimum term, for parole eligibility, with subsection 8 restricting this to offenders not convicted of a violent, sex, category A or B or DUI felonies. Deal said that Plaintiff's sentences had minimum terms he must serve before being eligible for parole, so NRS 209.4465 credits prior to AB 510 did not apply to the minimum terms. In addition, Deal stated that since his offenses are violent category A and B felonies, the exception from AB 510 to apply NRs 209.4465 credits to minimum terms does not apply to Plaintiff. Deal concluded that Plaintiff's credits were being calculated correctly. (ECF No. 29-4 at 2.)

On October 5, 2017, the Nevada Supreme Court issued its opinion in *Williams v. State Department of Corrections*, 402 P.3d 1260, 133 Nev. 594 (2017). *Williams*, like *Vonseydewitz*, confirmed that statutes in effect at the time the offenses were committed apply. *Williams,* 402 P.3d at n. 1. Specifically, the 2007 amendments to NRS 209.4465, codified in section 8 of the statute (the restrictions on credits for certain types of crimes) did not apply because the offenses in question were committed in 2000. *Id. Williams* discussed NRS 209.4465(7)'s statement that credits earned under the statute "[a]pply to eligibility for parole unless the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole." The court considered the issue presented in *Vonseydewitz*:

whether such credits applied to parole eligibility under a "minimum-maximum" and not "parole eligibility" statute. The Nevada Supreme Court concluded that when an offender was sentenced under a "minimum-maximum" sentence that that did not mention parole eligibility, "credits do apply to eligibility for parole as provided in NRS 209.4465(7)(b)." *Id*. at 595.

Specifically, the inmate was sentenced for each count to a minimum of 36 months and maximum of 96 months, to be served consecutively. She filed a habeas petition arguing that credits earned under NRS 209.4465 should be applied to her parole eligibility. The State argued that the statute required her to serve the minimum term before credits were applied.

The Nevada Supreme Court explained that the first part of NRS 209.4465(7)(b) contained the general rule "that credits earned pursuant to NRS 209.4465 apply to eligibility for parole, while the second part contained the limitation "the general rule does not apply if the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole." *Id*. at 596. The Nevada Supreme Court stated: "Thus, if the sentencing statute did not specify a minimum sentence that had to be served before parole eligibility, credits should be deducted from a prisoner's minimum sentence, making an inmate eligible for parole sooner than he or she would have been without the credits." *Id*. at 597.

*Williams* confirmed what the Nevada Supreme Court had concluded in *Vonseydewitz*: that in the case of an inmate sentenced under a "minimum-maximum" sentence that did not mention parole eligibility, "the general rule set forth in NRS 209.4465(7)(b) appl[y] and provide[ ] for the deduction of credits from [the] minimum sentence." Id. at 597-600. The Supreme Court also clarified that this interpretation "applies only to crimes committed on or

between July 17, 1997 (the effective date of NRS 209.4465) and June 30, 2007 (the effective date of NRS 209.4465(8)). Id. at n. 7.

On February 11, 2018, Plaintiff submitted another grievance. He advised that he had filed a petition for writ of habeas corpus concerning the computation of time on June 3, 2016, challenging NDOC's failure to properly apply the credits under NRS 209.4465(7) from his parole eligibility date. The Eleventh Judicial District Court denied the petition on September 19, 2017. He appealed, and then the district court notified him that it would reconsider its decision in light of the Nevada Supreme Court decision in *Williams*. He filed a motion to withdraw the appeal, and the Deputy Attorney General filed a non-opposing noting that *Williams* holds that inmates, like Plaintiff, were entitled to application of good time statutory credits toward their minimum term of imprisonment. (ECF No. 29-5 at 13-14.) On January 11, 2018, Program Officer Shelly Williams made a declaration stating that NDOC was in the process of recalculating the sentences of all inmates impacted by *Williams*. He asked for his parole eligibility date to be adjusted. (ECF No. 29-5 at 9-16.)

J. Ferro responded that NDOC was aware of the outcome of *Williams* and was compiling a list of those that may be affected and would review and adjust the sentence structure of inmates that fell within the criteria. (ECF No. 29-5 at 8.)

On February 21, 2018, the Eleventh Judicial District Court granted Plaintiff's habeas petition in part. The court found that *Williams* did not change the court's holding regarding ground 1 of the petition because he had already expired his term of incarceration in Count I, and the court did not have authority for a retroactive grant of parole. The court granted ground II, finding that under *Williams* Plaintiff was entitled to statutory credits under NRS 409.4465(7)(b) for the term of incarceration for Count 2. (ECF No. 29-5 at 5-6.)

12

On February 28, 2018, Plaintiff filed a first level grievance stating that *Williams* came out on October 5, 2017, and it had been five months and his time had not been re-calculated. (ECF No. 29-5 at 2, 4.) R. Baker responded that NDOC was compiling a list of inmates affected and would be reviewing and adjusting the sentence structure of those inmates. (ECF No. 29-5 at 3.)

A March 19, 2018 case note printout report indicates that Plaintiff's sentence was adjusted in accordance with Williams, and his new parole eligibility date was February 6, 2016 (adjusted from April 26, 2019 before the credits were applied), and he would be added to the next available parole eligibility date list. (ECF No. 29-7 at 2.)

Plaintiff had a parole board hearing on May 30, 2018, and was denied parole until his mandatory parole release date. (ECF No. 29-8.)

**B. Analysis**

The court will first address Defendants' argument that Plaintiff's claim is *Heck*-barred insofar as he claims Defendants violated his due process rights by not properly calculating his statutory credits under NRS 209.4465, causing him to spend an extra 85 days in prison on his sentence under Count 1.

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction of imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus,

28 U.S.C. § 2254." *Id*. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been … invalidated is not cognizable under § 1983." *Id*. at 487. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the duration of his confinement, if it would, the claim must be dismissed unless the plaintiff can demonstrate the period of confinement has already been invalidated.

Plaintiff argues that *Heck* does not apply because he is not seeking to have his statutory credits restored, but is seeking damages for each day he was unlawfully incarcerated. He relies on *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004).

While he might not seek restoration of the statutory credits, Plaintiff repeatedly makes clear he is challenging the fact that he spent an extra 85 days on his first sentence. (*See e.g.* ECF No. 37 at 12:10-12; 13:21, 14:3-4, 26-27; ECF No. 39 at 1:20-22, 12:16-18.)

The fact that Plaintiff is not seeking to have the statutory credits restored is immaterial as *Heck* expressly states that "in order to recover *damages* for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been" invalidated. *Heck*, 512 U.S. at 487 (emphasis).

*Muhammad* is inapposite. *Muhammad* makes clear at the outset that challenges "to particulars affecting [the] duration" of confinement "are the province of habeas corpus[.]" *Muhammad*, 540 U.S. at 750 (citation omitted). *Muhammad* stated that "*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Id*. at 751. *Muhammad* did not challenge his conviction, but filed suit under section

1983 alleging that he was charged with threatening behavior in retaliation for filing prior lawsuits and grievances against the officer. The appellate court dismissed the case as *Heck*-barred, finding that he sought expungement of the misconduct charge from his prison record. The Supreme Court noted this was factually flawed as his amended pleading did not seek this relief. The Supreme Court also stated that *Heck* did not categorically apply to all suits challenging prison disciplinary proceedings. The Supreme Court noted that a disciplinary sanction could have a bearing on the duration of time to be served if good-time credits were revoked, but in that case, the district court had found that no good time credits were revoked. Therefore, the action did not implicate his conviction or duration of his sentence.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the inmate was found guilty of prison disciplinary charges that resulted in the deprivation of good-time credits. He filed a civil rights action for damages, claiming that the hearing officer did not allow him to call witnesses and that the hearing officer was biased. *Id*. at 646-47. The Supreme Court held that even though he was not expressly seeking restoration of good-time credits, his claims were barred by *Heck* because a judgment in his favor would necessarily imply the invalidity of the deprivation of the good-time credits. *Id*. at 647.

Here, even though Plaintiff does not seek restoration of his statutory credits and requests only damages, if the court found in his favor, it would mean that Plaintiff's sentence was improperly extended by 85 days, implicating *Heck*. In *Muhammad*, there was no finding that the inmate suffered any deprivation of his good time credits. Here, on the other hand, Plaintiff asks the court to find he was not properly granted statutory time credits.

In this case, Plaintiff is unquestionably challenging the duration of his confinement with respect to his sentence for Count 1. Therefore, the court concludes that if it were to find in

Plaintiff's favor, this would necessarily imply the invalidity of the duration of his confinement as to Count 1. As such, Plaintiff is required to demonstrate that period of confinement has been invalidated. Plaintiff cannot do so. Plaintiff acknowledges that when his habeas petition was returned to the Eleventh Judicial District Court after *Williams*, the Eleventh Judicial District Court denied the petition as moot as to ground 1 of the petition concerning Count 1. Specifically, the court held that *Williams* did not change the court's holding regarding ground 1: Plaintiff previously expired his term of incarceration for Count 1 and the court was not aware of authority that the parole board has authority to grant retroactive parole.

Plaintiff asserts several arguments as to invalidity of the duration of the sentence. First, he asserts that the state judge never ruled on the merits of Count 1. Second, he states that the decision the state court relied on in denying the petition as moot with respect to Count 1— *Johnson v. Director, Department of Prisons*, 105 Nev. 314, 316, 774 P.2d 1047, 1049 (1989)— has been abrogated by the United States Supreme Court holding in *Garlotte v. Fordice*, 515 U.S. 39 (1995). As such, he argues that Count 1 is not moot.

First, the court did not re-address the merits of the claim as to Count 1 on remand, but the court denied it as moot. This is not the invalidation *Heck* requires.

Second, if Plaintiff disagreed with the Eleventh Judicial District's determination that the petition was moot as to Count 1, he should have sought reconsideration and, if unsuccessful, filed an appeal in order to obtain an invalidation of the duration of his confinement under Count 1.

The Nevada Supreme Court has clear that "the application of credits under [NRS] 209.4465(7)(b) only serves to make an offender eligible for parole earlier" and "no relief can be afforded where the offender has already expired the sentence. *Williams*, 402 P.3d at 1265 n. 7 (citing *Johnson v. Dir. Nev. Dep't of Prisons*, 105 Nev. 314, 316, 774 P.2d 1047, 1049 (1989).)

16

Plaintiff argues that the mootness determination is improper under *Garlotte v. Fordice*, 515 U.S. 39 (1995). The issue in *Garlotte* was whether an inmate was considered "in custody" for purposes of bringing a federal habeas petition when he sought to attack the judgment of conviction on a sentence that had already expired when he was serving consecutive sentences. The Supreme Court held that the sentences would be viewed in the aggregate for this purpose.

Whether Plaintiff is "in custody" for purposes of bringing a habeas petition is not at issue in this case. As District Judge Du noted in a federal habeas case, "*Garlotte* does not answer whether [Plaintiff] can obtain relief on [Count 1]." *Wirth v. Baker*, 2019 WL 2552204 (D. Nev. June 20, 2019). Judge Du turned to Nevada law to answer this question, pointing out that in Nevada, "no relief can be afforded where the offender has already expired the sentence"; an inmate "cannot claim that under *Williams* the parole board should have considered his case earlier than it did, because Nevada does not allow for retroactive parole"; and, "*Williams* interprets only § 209.4465(7)(b) for parole eligibility. It does not affect a sentence that has already expired fully." *Id.*, at *3-4, citing *Williams*, 402 P.3d at 1265 n. 7, *Niergarth v. State*, 768 P.2d 882, 883-84, 105 Nev. 26 (1989); *Johnson*, 774 P.2d at 1049.

Furthermore, the Nevada Court of Appeals has consistently held that *Garlotte* does not overrule *Johnson*. *See e.g. Stone v. Baker*, No. 77556-COA, 2019 WL 2486716 (Ct. App. Nev. June 13, 2019) (unpublished); *Barrett v. Baker*, No. 77057-COA, 2019 WL 2339536 (Ct. App. Nev. May 31, 2019) (unpublished) (both stating that *Garlotte* does not overrule *Johnson* and affirming district court decision to deny claim that statutory credits should apply to minimum parole eligibility of sentences that have expired).

While Plaintiff might argue that the expiration of the sentence should not moot his claim that he could have become eligible for parole, and that Nevada should allow retroactive parole,

these are disputes over the application of state law that he should have raised in state court in an effort to invalidate the duration of his sentence in Count 1. He did not do so.

In sum, summary judgment should be granted in Defendants' favor insofar as they argue that his claim relative to his sentence on Count 1 because it is *Heck*-barred.

Even if the claim as to Count 1 was not *Heck* barred[2], summary judgment should still be granted in Defendants' favor as to both Counts 1 and 2, because there is no protected liberty interest at issue as the failure to properly apply the statutory time credits under NRS 209.4465.

NRS 209.4465(7) permits good time credits to be applied to a prisoner's minimum sentence, in certain circumstances, thus making an inmate eligible for parole sooner than he or she would have been without the credits. NRS 209.4465(7); *Williams*, 402 P.3d at 1262.

Due process requires the existence of a liberty or property interest. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Under *Williams*, no relief can be afforded when the inmate has appeared before the parole board on the sentence. *Williams*, 402 P.3d at 1265; *Niergarth v. Warden*, 105 Nev. 26, 29, 768 P.2d 882, 883-84 (1989). Plaintiff did ultimately receive a parole hearing. Additionally, as to Count 1, since Nevada does not allow for retroactive parole, Plaintiff cannot claim that the parole board should have considered his case earlier than it did. *Niergarth*, 768 P.2d at 883-84.

Since Plaintiff expired the sentence under Count 1, and was ultimately granted a parole hearing under Count 2 when his credits were re-calculated, NRS 209.4465 did not create any liberty interest.

---

[2] Plaintiff specifically argues that the failure to apply the credits to Count 1 resulted in his serving 85 extra days on that sentence. If, for instance, Plaintiff argued that not applying the statutory credits to Count 1 resulted in the failure to properly advance his parole eligibility date, the same analysis the court applies to Count 2 would also apply to Count 1.

Moreover, it is well settled that in Nevada, state prisoners do not have a liberty interest in parole or parole eligibility. *Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010).

Finally, a dispute over state application of state law does not rise to the level of a due process violation. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011); *Young v. Williams*, No. 2:11-cv-01532-KJD, 2012 WL 1984968, at *3 (D. Nev. June 4, 2012) (alleged error in applying good time credits to sentence was an error of state law that did not constitute a due process violation).

In conclusion, Defendants' motion for summary judgment should be granted insofar as Plaintiff claims his due process rights were violated when they did not properly apply statutory credits to his sentences under Count 1 and Count 2 because his claim as to Count 1 is *Heck*-barred, and he had no protected liberty interest with respect to either count. As a result of the court's conclusion, it need not reach Defendants' remaining arguments.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 29) and **DENYING** Plaintiff's Partial Motion for Summary Judgment (ECF No. 39).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 7, 2019

                                                  _____
                                                  William G. Cobb
                                                  United States Magistrate Judge